IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| STEVEN M. SHUBERT,<br>Individually and on behalf of all<br>others similarly situated, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 09-3365 |
| | : | |
| v. | : | |
| | : | |
| MANHEIM AUCTIONS, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

YOHN, J.                                                                                    February __, 2010

       Plaintiff, Steven M. Shubert, asks the court to remand this consumer class action lawsuit

to the Court of Common Pleas of Montgomery County, Pennsylvania, where he originally filed

the action.  Plaintiff argues that the notice of removal filed by one of the defendants—Manheim

Auctions, Inc. ("MAI"), which plaintiff identified simply as "Manheim" in his original

complaint—was untimely and that defendants have failed to show that the action satisfies the

class action amount in controversy requirement for federal diversity jurisdiction.  Plaintiff also

seeks an award of costs and attorneys' fees incurred as a result of the improper removal.  For the

reasons set forth herein, the court will grant the motion to remand; however, the court will deny

the request for costs and attorneys' fees.

**I.      Facts and Procedural History**

       Plaintiff filed this action in the Court of Common Pleas on April 3, 2009, naming as

defendants "Manheim" and "Manheim's Pennsylvania Auction Services, Inc." ("MPAS"), two

business entities that, according to the complaint, "inspected vehicles in Pennsylvania for numerous companies in the auto leasing industry." (Aff. of Michael H. Landis in Support of Pl.'s Mot. to Remand ["Landis Aff."] ¶ 2 & Ex. A ["Compl."] ¶¶ 2-4, 8.)[1] The complaint alleged that plaintiff and others leased motor vehicles under "closed-end" leases providing that the lessee would be responsible only for excess wear and use existing at the time the vehicle was surrendered. (Compl. ¶¶ 7, 9, 15, 17-18.) According to the complaint, members of the putative class surrendered their vehicles to defendants for inspection; however, pursuant to their policy and practice, defendants did not inspect the vehicles and prepare a "Condition Report" to establish the existence (or nonexistence) of excess wear and use at the time of surrender. (*Id.* ¶¶ 7, 10, 11(a), 19, 20.) Moreover, defendants did not properly secure or protect the vehicles between the time of surrender and inspection, but allowed employees and others access to and use of the vehicles. (*Id.* ¶¶ 7, 11(b)-(c).) When defendants did ultimately issue Condition Reports, those reports were based on untimely inspections—a fact defendants did not disclose to the vehicle lessors—and as a result, plaintiff and other class members were improperly charged for excess wear and use they did not cause.[2] (*See id.* ¶¶ 7, 11(d)-(e), 21, 22.) The complaint included three state-law counts—for negligent inspection, negligent misrepresentation, and

---

[1] The complaint described "Manheim" as "a business entity, the exact nature of which is not presently known, which maintains an office at 6205 Peachtree Dunwoody Road, Atlanta, Georgia," and described "Manheim's Pennsylvania Auction Services, Inc." as "a business entity with offices at 2280 Bethlehem Pike, Hatfield, Montgomery County, Pennsylvania." (Compl. ¶¶ 2-3.) The complaint also alleged that at all relevant times "defendant [MPAS] was acting as the agent of defendant Manheim." (*Id.* ¶ 6.)

[2] Plaintiff alleged that although he surrendered his vehicle free of excess wear and use, he was nevertheless charged $578.79 for excess wear and use based on the defendants' false Condition Report. (*Id.* ¶¶ 19, 22.)

violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL")—and sought class certification, compensatory damages for all excess wear and use charges (plus interest), treble damages under the PUTPCPL, disgorgement, and an award of attorneys' fees and costs.  (*Id.*, Relief Requested.)

Both defendants received the complaint on or around April 10, 2009.  (Decl. of Graig P. Corveleyn, Esq., in Opp'n to the Pl.'s Mot. for Remand ["Corveleyn Decl."] ¶ 4; *see also* Landis Aff. ¶ 3 & Ex. B (affidavit of service as to defendant Manheim).)  An attorney for the defendants thereafter contacted plaintiff's counsel by phone on April 23, and followed up on the call with an April 28 letter setting forth defense counsel's understanding that plaintiff's counsel had agreed to file an Amended Complaint to correct plaintiff's failure to "properly identify the defendants" in the original complaint.  (*See* Corveleyn Decl. ¶ 5 & Ex. A (April 28, 2009, letter); Supp. Aff. of Michael H. Landis in Support of Pl.'s Mot. to Remand ["Landis Supp. Aff."] ¶¶ 2-3.)  The letter noted that the "proper party" to the matter was "a Michigan corporation authorized to transact business in Pennsylvania known as Manheim's Pennsylvania Auction Services, Inc. d/b/a/ Manheim Philadelphia formerly d/b/a Hatfield Auto Auction located at 2280 Bethlehem Pike, Hatfield, Pennsylvania 19440," and that "[t]he other defendant, 'Manheim,' that is named in the Complaint had no involvement with the allegations set forth in the Complaint."  (Corveleyn Decl. ¶ 5 & Ex. A.)

In response to the April 28 letter, plaintiff's counsel called defense counsel on May 1 and told him that plaintiff was not willing to withdraw the complaint against Manheim.  (Landis Supp. Aff. ¶ 4 & Ex. B (plaintiff's counsel's notes of May 1 phone call).)  Counsel for the parties spoke again on May 4, at which time defense counsel notified plaintiff's counsel that "Manheim"

is a fictitious name under which a corporate entity known as "Manheim Auctions, Inc." conducts business. (*Id.* ¶ 5; Landis Aff., Ex. C (May 4, 2009, letter from defense counsel to plaintiff's counsel referencing phone conversation earlier that day).) The parties again discussed the possibility of plaintiff filing an amended complaint.[3] Later that same day, defense counsel wrote to plaintiff's counsel, confirming the proper corporate name for "Manheim" and requesting notification from plaintiff's counsel regarding counsel's intentions regarding the filing of an amended complaint. (Landis Aff., Ex. C.) The letter also referenced defense counsel's willingness to accept service of process, in the event plaintiff were to file an amended complaint. (*Id.*)

On May 14, plaintiff's counsel wrote to defense counsel, confirming plaintiff's agreement "to file a First Amended Complaint which identifies Manheim Auctions, Inc. as a defendant," and enclosing a proposed stipulation permitting the amendment. (*Id.*, Ex. D (May 14, 2009, letter); Corveleyn Decl. ¶ 8.) On June 24, plaintiff filed the stipulation, executed by counsel for both parties, and the amended complaint in the Court of Common Pleas and served both documents, together with plaintiff's first request for production, on defendants' counsel by mail. (Landis Aff. ¶¶ 6-7 & Exs. E-G; *see also* Corveleyn Decl. ¶ 9.) The amended complaint named as defendants "Manheim Auctions, Inc." and "Manheim's Pennsylvania Auction Services, Inc." (Landis Aff., Ex. F ["Am. Compl."].) Defense counsel received the amended complaint on June

---

[3] Plaintiff contends that counsel discussed the possibility of plaintiff filing an amended complaint "for the sole purpose of listing the proper corporate name for Manheim which was already a defendant and which had already been served with the Initial Complaint." (Landis Supp. Aff. ¶ 5.) Defendant suggests that plaintiff was contemplating either removing or properly naming MAI "so that MAI could be properly served." (Corveleyn Decl. ¶¶ 6-7.)

27, 2009, and defendant MAI filed a notice of removal on July 27, 2009.[4]  (*Id.* ¶¶ 10-11.)

On August 25, 2009, plaintiff filed the instant motion to remand.  Plaintiff argues that remand is warranted because the notice of removal was untimely and because MAI has failed to establish a basis for federal subject matter jurisdiction.  In particular, plaintiff argues that MAI has failed to demonstrate that the action satisfies the $5 million amount in controversy requirement for diversity jurisdiction in a class action.  *See* 28 U.S.C. § 1332(d)(2).

## II.    Legal Standards

Removal and remand of class actions are governed by 28 U.S.C. § 1453, which incorporates, with certain exceptions, the procedures set forth at 28 U.S.C. §§ 1446 and 1447. "[A]ny defendant" in a class action of which the federal district courts have original jurisdiction may remove the case to the appropriate federal district court "without regard to whether any defendant is a citizen of the State in which the action is brought" and "without the consent of all defendants."  *Id.* § 1453(b).  Following removal, the plaintiff may move to remand the case based on a defect in the removal procedure or for lack of subject matter jurisdiction.  *See id.* § 1447(c). A motion to remand on the basis of a procedural defect must be filed within thirty days after the filing of the notice of removal, but if it appears "at any time before final judgment . . . that the district court lacks subject matter jurisdiction, the case shall be remanded."  *Id.*  "The removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'"  *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987)).

---

[4] Although MAI filed the notice of removal, both defendants, represented by the same counsel, have filed a joint opposition to the plaintiff's motion to remand.

## III.    Discussion

### A.    Subject Matter Jurisdiction – Diversity

Although plaintiff's motion to remand the case is based primarily on the untimeliness of

the notice of removal, because the timeliness of that notice depends on whether the original

complaint was removable, *see* 28 U.S.C. § 1446(b), the court will first consider plaintiff's

argument that defendants have failed to establish a basis for federal subject matter jurisdiction.

Defendants contend that removal was proper because this case falls within the district courts'

diversity jurisdiction.  (Defs.' Opp'n 3-5; *see also* Notice of Removal ¶ 11 (allegations regarding

number of class members and amount in controversy).)  Pursuant to § 1332(d), and with certain

exceptions not applicable here, the district courts have original diversity jurisdiction of any class

action in which (1) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive

of interest and costs," (2) "any member of a class of plaintiffs is a citizen of a State different from

any defendant," and (3) "the number of members of all proposed plaintiff classes in the

aggregate" is 100 or greater.  28 U.S.C. § 1332(d)(2), (5).

In this case, the existence of diversity jurisdiction turns on whether, aggregating the

claims of individual class members, the amount in controversy "exceeds the sum or value of

$5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(2), (6).[5]  MAI's notice of

_____

[5] The parties do not dispute that the proposed class includes 100 or more members.  (*See* Compl. ¶ 29 (estimating that the class "consists of more than 500 persons and entities"); Defs.' Opp'n 5 (suggesting that the number of potential class claimants is "between the 500 suggested by the Plaintiff and the 50,000 other vehicle inspections conducted by MPAS during 2008 alone").)  Moreover, although plaintiff notes in his remand papers that the notice of removal includes "no allegation of diverse citizenship" (Pl.'s Mem. 9), the case appears to satisfy the minimal diversity of citizenship requirement applicable to class actions.  The declaration defendants submitted in opposition to plaintiff's motion to remand—which the court may consider in evaluating the existence of federal jurisdiction, *see USX Corp. v. Adriatic Ins. Co.*,

removal was deficient in that it alleged that the amount in controversy exceeded the $75,000 threshold for individual actions rather than the $5 million requirement for class actions. (Notice of Removal ¶ 11 ("The Plaintiff alleges 500 class members, each with a claim comparable to the Plaintiffs in the amount of $578.79 with total claims of $289,395.00, an amount in excess of $75,000.00.").) Because defendants now argue that the amount in controversy exceeds $5 million in their opposition to the motion to remand, the court will construe the opposition as an amendment to MAI's notice of removal. *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002) (construing opposition to motion to remand explaining the basis for defendant's allegation that the amount in controversy exceeded $75,000 and evidence submitted therewith as an amendment to defendant's notice of removal); *Fleming & Hall, Ltd. v. Cope*, 30 F. Supp. 2d 459, 461 (D. Del. 1998) (granting defendant's motion, made at oral argument, to amend notice of removal to reflect the correct statutory minimum amount in controversy).

The Third Circuit recently has clarified the standards that apply in determining whether a class action "removed to a federal court as a diversity matter properly meets the requisite amount in controversy set by [the Class Action Fairness Act]."[6] *Frederico v. Home Depot*, 507 F.3d 188,

---

345 F.3d 190, 205 n.12 (3d Cir. 2003) (noting that the court may treat facts contained in later-filed affidavits as an amendment of the notice of removal under 28 U.S.C. § 1653)—states that both defendants are incorporated and have their principal places of business in states other than Pennsylvania, and it appears from the complaint that plaintiff is a Pennsylvania resident. (Corveleyn Decl. ¶¶ 13-14 (stating that "MPAS is a Michigan corporation with its principal place of business in Georgia" and that "MAI is a Georgia corporation with its principal place of business in Georgia"); Compl. ¶ 1 (listing an address for plaintiff in Jenkintown, Pennsylvania).)

[6] The Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005), amended "the procedures that apply to consideration of interstate class actions." Among other things, the Act amended the federal diversity statute, 28 U.S.C. § 1332, as applied to class actions, 119 Stat. at 9-12, and added a new provision (codified at 28 U.S.C. § 1453) regarding removal of interstate class actions to federal district court, 119 Stat. at 12-13.

193 (3d Cir. 2007). The court repeatedly has recognized that "the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Id.*; *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004); *see also Morgan v. Gay*, 471 F.3d 469, 473 (3d Cir. 2006) ("Under [the Class Action Fairness Act], the party seeking to remove the case to federal court bears the burden to establish that the amount in controversy requirement is satisfied."). How this burden is to be satisfied depends, in turn, on the posture of the particular case.

Recognizing that the plaintiff is "the master of [his] own claim" and may limit his claim so as to avoid federal subject matter jurisdiction, the Third Circuit has held that "where the plaintiff expressly limits [his] claim below the jurisdictional amount as a precise statement in the complaint, . . . the proponent of [federal] jurisdiction must show, to a legal certainty, that the amount in controversy *exceeds* the statutory threshold." *Frederico*, 507 F.3d at 195-96; *Morgan*, 471 F.3d at 474.[7] Where the complaint includes no such "precise statement" limiting the plaintiff's claim, however, the removing party has a lesser burden. When the jurisdictional facts are disputed, the party alleging jurisdiction must justify his allegations by a preponderance of the evidence. *Frederico*, 507 F.3d at 194, 196. "Even where allegations are not challenged by the adversary, 'the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of the evidence.'" *Id.* at 198 (quoting *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)). Once findings of fact have been made, or

---

[7] This standard, first articulated by the Third Circuit in *Morgan v. Gay*, is referred to herein as the "*Morgan* standard."

when the relevant facts regarding the amount in controversy are not disputed, "the case must be remanded if it appears to a legal certainty that the plaintiff *cannot* recover the jurisdictional amount." *Id.* at 194, 197; *Samuel-Bassett*, 357 F.3d at 397-98.

In this case, plaintiff's complaint and amended complaint do not identify a precise sum being sought but instead list the following general categories of damages: (1) compensatory damages for all excess wear and use charges, together with interest; (2) treble damages pursuant to the PUTPCPL, 73 Pa. Stat. Ann. § 201-9.2(a); (3) disgorgement of the ill-gotten gains defendants received from excess wear and use charges; and (4) attorneys' fees and costs. (Compl., Relief Requested; Am. Compl., Relief Requested.) The complaint and amended complaint also allege, on the subject of damages, that the named plaintiff was charged $578.79 for excess wear and use he did not cause and that, as a result of defendants' conduct, other class members suffered "similar damages." (Compl. ¶¶ 7, 22; Am. Compl ¶¶ 7, 22.) Plaintiff estimates that the putative class "consists of more than 500 persons and entities." (Compl. ¶ 29; Am. Compl. ¶ 29.)

In arguing that the amount in controversy in this case exceeds $5 million, defendants (1) assume compensatory damages of between $500 and $1,500 per class member for an average of $1,000; (2) triple this amount to $3,000, based on plaintiff's request for treble damages pursuant to the PUTPCPL; and (3) note that the number of potential class members is somewhere between 500 (the number suggested by plaintiff) and 50,000 (the number of vehicle inspections that defendant MPAS conducted at its facilities in 2008).[8] (Defs.' Opp'n 5.) Based on these figures,

---

[8] Using defendants' numbers, there would need to be 1,667 class members to reach the $5 million threshold.

defendants assert that even without disgorgement and attorneys' fees, it "seems likely" that the claims of the individual class members, on an aggregated basis, "might" exceed $5 million. (*Id.*)

In response, plaintiff neither expressly challenges nor endorses the figures used by defendants to calculate the amount in controversy. Rather, plaintiff asserts that defendants have failed to satisfy their burden to prove to a legal certainty that the court has jurisdiction. (Pl.'s Supp. Mem. 2-3.) Because plaintiff did not expressly limit his claim below the jurisdictional amount, however, the *Morgan* standard is inapplicable. *See Frederico*, 507 F.3d at 196 n.7 (noting that "the holding of *Morgan* . . . is a viable precedent to only those diversity class action removal cases where the original complaint [limits recovery to not exceed $5 million]").

As the Third Circuit recognized in *Frederico*, even where the jurisdictional facts are not expressly in dispute, the court may still require the party alleging jurisdiction "'to justify his allegations by a preponderance of the evidence.'" *Id.* at 198 (quoting *McNutt*, 298 U.S. at 189). In that case, the court found it unnecessary to place such a burden on the defendant because the defendant had based its calculation of aggregate class damages on allegations made in the plaintiff's own complaint. *Id.* Here, in contrast, defendants rely on their own estimates of average damages per class member and of the total number of class members—estimates that significantly exceed those alleged in the complaint—to reach the jurisdictional amount. (*Compare* Compl. ¶¶ 7, 22, 29 (alleging that plaintiff suffered damages of $578.79 as a result of defendants' conduct and estimating a class consisting of "more than 500 persons and entities" that "suffer[ed] similar damages"), *with* Defs.' Opp'n 5 (estimating average compensatory damages of $1,000 per class member and putting the number of potential class members at between 500 and 50,000).) In these circumstances, it is appropriate to address whether the

jurisdictional facts have been established by a preponderance of the evidence before proceeding to determine whether it appears to a legal certainty that plaintiff cannot recover the jurisdictional amount.

The court is not persuaded that defendants have met their burden in this regard. As noted, plaintiff seeks (1) compensatory damages for all excess wear and use charges, (2) treble damages pursuant to the PUTPCPL, (3) disgorgement, and (4) attorneys' fees.[9] As to compensatory damages, defendants assume that such damages average $1,000 per class member (Defs.' Opp'n 5), but this assumption is without foundation. The complaint alleges that plaintiff's own compensatory damages for excess wear and use charges were $578.79 and that other class members suffered "similar damages." (Compl. ¶¶ 7, 22.) Defendants suggest (without citation) that plaintiff alleges that "other class members may have *greater* compensatory damages than Plaintiff" (Defs.' Opp'n 5 (emphasis added)), but they offer no basis for their assumption that class members' damages will be in the range of $500 to $1,500, for an average of $1,000 per class member (*id.*). In the absence of any other supportable figure, plaintiff's own compensatory damages provide a reasonable estimate of the class average. *See Frederico*, 507 F.3d at 197-99 (assuming that named plaintiff's damages represented the average actual damages of each putative class member).

As to the remaining categories of damages, the PUTPCPL authorizes an award of "up to three times the actual damages sustained," 73 Pa. Stat. Ann. § 201.9.2(a), which, in this case,

---

[9] Plaintiff also seeks interest and costs; however, the statute requires such payments to be excluded in calculating the amount in controversy. 28 U.S.C. § 1332(d)(2). Defendants suggest that plaintiff also demands "punitive damages in an unspecified amount" (Defs.' Opp'n 5), but no such demand appears in the complaint or amended complaint.

11

would amount to $1,736.37 per class member. Plaintiff also seeks disgorgement of "the ill-gotten gains [defendants] received from [excess wear and use] charges" (Compl., Relief Requested); however, it is not at all clear what, if anything, he could recover in this category, assuming that compensatory damages are awarded. Moreover, defendants do not include disgorgement in their calculation. (*See* Defs.' Opp'n 5 (excluding disgorgement).) Finally, plaintiff seeks attorneys' fees, which are also available under the PUTPCPL. *See* 73 Pa. Stat. Ann. § 201-9.2(a) (relief the court may award to the plaintiff includes "reasonable attorney fees"). In *Frederico*, the Third Circuit noted that such fees "could be as much as thirty percent of the judgment." 507 F.3d at 199. Thirty percent of a $1,736.37 judgment is $520.91, for a total judgment of $2,257.28 per class member.

Assuming damages of $2,257.28 per class member, there would need to be 2,215 class members to reach the $5 million threshold, a number that substantially exceeds the "500 or more" persons and entities estimated by plaintiff. As defined in the complaint, the class consists of "[a]ll persons and entities who leased a motor vehicle under a closed-end lease, surrendered the leased vehicle to defendants *in Pennsylvania*, and who were charged for excess wear and use by the vehicle lessor." (Compl. ¶ 28 (emphasis added).) Thus, to satisfy their burden to establish the jurisdictional facts by a preponderance of the evidence, defendants at a minimum must show that it is more likely than not that there exist 2,215 or more persons or entities who surrendered leased vehicles to defendants *in Pennsylvania*. *See Lewis v. Ford Motor Co.*, 610 F. Supp. 2d 476, 483 (W.D. Pa. 2009) (preponderance of the evidence standard means that "'the defendant must provide evidence establishing that it is more likely than not that the amount in controversy exceeds [the statutory minimum]'" (quoting *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398,

404 (9th Cir. 1996) (internal quotation marks omitted))). The sole "evidence" defendants have produced on this issue consists of their assertion in their opposition memorandum that "[d]uring the calendar year 2008, MPAS conducted over 50,000 vehicle inspection reports at its facilities." (Defs.' Opp'n 4; *see also id.* at 5.) The opposition also states, however, that Pennsylvania is not MPAS's principal place of business. (*Id.* at 4 ("MPAS is a Michigan corporation with its principal place of business in Georgia. MPAS has business locations in Pennsylvania *but not its principal place of business.*" (emphasis added)). Thus, even assuming that defendants' assertion in their opposition memorandum regarding the number of inspections MPAS conducted "at its facilities" in 2008 may be considered in determining the amount in controversy,[10] it says nothing about the number of those inspections that were conducted in Pennsylvania. Indeed, defendants themselves acknowledge as much, arguing that there is no basis for the court to decline jurisdiction pursuant to the Class Action Fairness Act's "local controversy" exception[11] because "[t]here is no evidence before the Court at this time as to a proposed number of [the 50,000 inspections conducted by MPAS] that might fit within the Plaintiff's allegations." (Defs.' Opp'n

---

[10] This assertion regarding the number of inspections conducted by MPAS in 2008 appears only in defendants' opposition memorandum, and not in the accompanying declaration or the notice of removal itself. As noted, the court may consider facts contained in the notice of removal and in later-filed affidavits in determining whether the amount in controversy requirement has been satisfied, *see Chrin v. Ibrix, Inc.*, 293 F. App'x 125, 127-28 (3d Cir. 2008) (finding jurisdictional amount to have been satisfied based on affidavit from removing defendant), *cert. denied*, 130 S. Ct. 143 (2009); *USX Corp.*, 345 F.3d at 205 n.12. However, it is not clear that the court may consider factual assertions in legal memoranda for this purpose.

[11] Under 28 U.S.C. § 1332(d)(4), the district courts are required to decline jurisdiction "when the controversy is uniquely local and does not reach into multiple states." *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 149 (3d Cir. 2009) (footnote omitted). Although plaintiff argues that defendants have failed to demonstrate that the court is not required to decline jurisdiction under § 1332(d)(4) (Pl.'s Mem. 10), the burden is on plaintiff to establish that the local controversy requirement applies. *Kaufman*, 561 F.3d at 153.

13

4.)  In the absence of any such evidence, defendants have failed to justify their jurisdictional

allegations by a preponderance of the evidence, and the case must be remanded.

**B.      Timeliness**

Even if it defendants had sufficiently established a basis for federal subject matter

jurisdiction, remand would still be warranted as MAI's notice of removal was not timely filed.

The timeliness of removal is governed by 28 U.S.C. § 1446, which provides, in relevant part:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . .

28 U.S.C. § 1446(b).

MAI filed its notice of removal in this case on July 27, 2009.  Defendants argue that the

notice was timely filed because the event that triggered the thirty-day period in which to file such

notice was MAI's receipt of the amended complaint on June 27, 2009.  (*See* Defs.' Opp'n 2-3.)

According to defendants, MAI's receipt of the original complaint on April 10, 2009, did not

commence the thirty-day period because the complaint misidentified MAI as "Manheim,"

thereby rendering service ineffective.  (*See id.*)  Thus, they argue, MAI was not properly served

until June 27, 2009, when it received the amended complaint, which corrected the prior

misidentification.  (*Id.*)

In *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999), the

Supreme Court clarified that the time in which to file a notice of removal under 28 U.S.C.

§ 1446(b) does not begin to run until the defendant has been officially summoned to appear in the

action. In reaching this conclusion, the Court construed the language of § 1446(b) in light of the

"bedrock principle" that "[a]n individual or entity named as a defendant is not obliged to engage

in litigation unless notified of the action, and brought under a court's authority, by formal

process." *Id.*; *see also id.* at 350-51. The Court went on to hold that "a named defendant's time

to remove is triggered by simultaneous service of the summons and complaint, or receipt of the

complaint, 'through service or otherwise,' after and apart from service of the summons, but not

by mere receipt of the complaint unattended by any formal service." *Id.* at 347-48.

As defendants note, whether MAI was required to take any action in response to the

original complaint, including filing a notice of removal, depends upon whether it was properly

served.[12] *See id.* at 350 (noting that "one becomes a party officially, and is required to take action

in that capacity, only upon service of a summons or other authority-asserting measure stating the

time within which the party served must appear and defend"). Whether service was proper is, in

turn, a question of state law.

Plaintiff's affidavit of service and supporting documents reflect that service was made

upon defendant "Manheim" by sending a copy of the complaint via certified first-class mail,

_____

[12] Defendants argue that the original complaint was "not removable" by MAI for the sole reason that MAI was not properly served and therefore was not a party to the action until it was served with the amended complaint on June 27, 2009. In particular, defendants do not argue that the original complaint was "not removable" because it lacked information necessary to determine the existence of federal subject matter jurisdiction. Nor could they, as apart from a couple of references to "Manheim" rather than MAI and the inclusion of "Manheim" as one of the fictitious names under which defendants conducted vehicle inspections in Pennsylvania, the original complaint is identical to the amended complaint, which MAI removed.

return receipt requested, to "Manheim" at 6205 Peachtree Dunwoody Road, Atlanta, GA 30328. (Landis Aff., Ex. B (affidavit of service and exhibit thereto).)  These documents further reflect that the complaint was delivered on April 10, 2009, and that a signature (which is illegible) was obtained.  (*See id.*)  In arguing that service of MAI was improper, defendants do not contend that the manner of service was impermissible under the Pennsylvania Rules of Civil Procedure.[13] Rather, defendants argue that service was ineffective solely because MAI was misidentified. (*See* Defs.' Opp'n 2-3.)

Under the Pennsylvania Rules, an action against a corporation or similar entity "shall be prosecuted . . . against [the] corporation or similar entity in its corporate name."  Pa. R. Civ. P. 2177.  For purposes of the Rules, the term "corporate name" means "any name, *real or fictitious*, under which a corporation or similar entity was organized, or conducts business, whether or not such name has been filed or registered."  Pa. R. Civ. P. 2176 (emphasis added).

In this case, defendants have conceded that "Manheim" is a fictitious name under which MAI does business.  (Landis Aff., Ex. C (May 4, 2009, letter from defense counsel to plaintiff's counsel stating that "the first named defendant in the caption; *i.e.*, Manheim, is a fictitious name. The corporate entity is *Manheim Auctions Inc. d/b/a Manheim*") (emphasis added); Notice of Removal ¶ 2 (stating that "MAI, through its counsel, informed the Plaintiff by letter dated May 4,

_____

[13] As plaintiff notes, the Pennsylvania Rules authorize service of original process by certified mail on out-of-state defendants.  *See* Pa. R. Civ. P. 404(b) (including service "by mail in the manner provided by Rule 403" as one of the ways in which "[o]riginal process shall be served outside the Commonwealth"); Pa. R. Civ. P. 403 ("If a rule of civil procedure authorizes original process to be served by mail, a copy of the process shall be mailed to the defendant by any form of mail requiring a receipt signed by the defendant or his authorized agent."); *see also Trzcinski v. Prudential Prop. & Cas. Ins. Co.*, 597 A.2d 687, 689 (Pa. Super. Ct. 1991) (Pennsylvania Rules of Civil Procedure "clearly permit a foreign corporation to be served . . . by mail").

2009 that the identified 'Manheim' was a non-existent entity *or a fictitious name* and that the true

corporate name of the defendant is Manheim Auctions, Inc.") (emphasis added).)  Although

defendants note that "entities that begin with the title 'Manheim' exist all over the country in

various forms and conduct business in numerous jurisdictions throughout the United States"

(Defs.' Opp'n 2), plaintiff served "Manheim"—the name under which MAI does business—at

the correct address for MAI, thereby eliminating any confusion as to which "Manheim" entity it

wished to sue.  (*See* Am. Compl. ¶ 2 (listing MAI's address as "6205 Peachtree Dunwoody Road,

Atlanta, GA"); Landis Aff., Ex. H ¶ 2 (defendants' answer admitting same on behalf of MAI).)

Accordingly, plaintiff's use of this fictitious name does not render service ineffective.  *See Clark*

*v. Wakefern Food Corp.*, 910 A.2d 715, 717-18 (Pa. Super. Ct. 2006) (finding that corporate

owner of a Shop Rite store had been properly served, notwithstanding that plaintiff had identified

the wrong corporate entity as the owner of the particular Shop Rite in question, where plaintiff

had served the manager of the Shop Rite at which the accident that was the basis of the suit

occurred, and where the store owner was conducting business under the corporate name "Shop

Rite").

    In arguing that service of MAI was improper, defendants note that upon receipt of the

original complaint, MAI "notified Plaintiff that the Original Complaint misidentified it as

'Manheim,'" and that plaintiff thereafter "*acknowledged* this inaccuracy and *consented* to file an

Amended Complaint for the express and singular purpose of making this correction for the

purpose of service."  (Defs.' Opp'n 2.)  The record reflects a series of communications between

counsel for the parties in which defense counsel notified plaintiff's counsel that the defendants

were not properly identified.  (*See* Corveleyn Decl., Ex. A (April 28, 2009, letter from defense

counsel to plaintiff's counsel, advising that plaintiff "did not properly identify the defendants in this matter" and reciting defense counsel's understanding that "rather than fighting over the issue, [plaintiff's counsel] agreed to file an Amended Complaint"); Landis Aff., Ex. C (May 4, 2009, letter from defense counsel to plaintiff's counsel, advising that "the first named defendant in the caption; *i.e.*, Manheim, is a fictitious name. The corporate entity is Manheim Auctions Inc. d/b/a Manheim").)[14] However, there is no indication in the record that plaintiff agreed that MAI had not been properly served with the original complaint. To the contrary, after MAI removed the action, plaintiff stated its position on the issue as follows: "Manheim Auction, Inc. was not misidentified in the initial Complaint, but was properly identified and sued in its fictitious name; indeed, Manheim Auctions, Inc. has acknowledged that it was served with the initial Complaint in April 2009." (Landis Aff., Ex. I (August 7, 2009, letter from plaintiff's counsel to defense counsel).)

Defendants also argue that "[f]ollowing the filing of the Amended Complaint, Plaintiff made service upon MAI as though it had never been served with the Original Complaint because it was improperly identified in the Original Complaint" (Defs.' Opp'n 2), but there is no evidence that this is true. Plaintiff asserts that both MAI and MPAS were served with the amended complaint "by first class mail, postage pre-paid sent to their counsel of record on June 24, 2009 pursuant to Pennsylvania Rule of Civil Procedure 440(a)(1)" (Landis Supp. Aff. ¶ 6), an assertion that is supported by the cover letter that accompanied these materials (Landis Aff., Ex. G (June

---

[14] Defense counsel also apparently advised plaintiff's counsel that "Manheim" was not a proper party to the action as it "had no involvement with the allegations set forth in the Complaint" (Corveleyn Decl., Ex. A); however, counsel's belief that "Manheim" should not have been included as a defendant does not render service ineffective.

24, 2009, cover letter to defense counsel enclosing date-stamped copies of the parties stipulation regarding the filing of the amended complaint and the amended complaint itself, as well as plaintiff's first request for production)). Although defendants contend that MAI "received formal service of the Amended Complaint on June 27, 2009" (Defs.' Opp'n 3), they do not specify the manner of such "formal service" and there is nothing in the record to suggest that plaintiff employed one of the methods by which original process may be served under Pennsylvania law.[15] Thus, contrary to defendants' assertion, it appears that plaintiff made service on MAI as if it had been properly served with the original complaint. *See* Pa. R. Civ. P. 440(a)(1) (specifying methods by which service of "all legal papers other than original process" may be made, including "mailing a copy to . . . each party at the address of the party's attorney of record endorsed on an appearance or prior pleading of the party, or at such other address as a party may agree").[16]

---

[15] The Pennsylvania Rules authorize service of original process outside the Commonwealth (1) "by a competent adult in the manner provided by Rule 402(a)," which lists the acceptable methods of personal service; (2) by a form of mail requiring a receipt signed by the defendant or his authorized agent pursuant to Rule 403; (3) "in the manner provided by the law of the jurisdiction in which the service is made for service in an action in any of its courts of general jurisdiction"; (4) "in the manner provided by treaty"; or (5) as directed by the foreign authority in response to a letter rogatory or request. Pa. R. Civ. P. 404; *see also* Pa. R. Civ. P. 402(a), 403. Because plaintiff mailed the amended complaint to counsel for MAI and MPAS, methods (1), (4), and (5) are plainly inapplicable in this case. Because there is no evidence that plaintiff sent the amended complaint by a form of mail "requiring a receipt signed by the defendant or his authorized agent," method (2) is likewise inapplicable. And defendants do not suggest that Georgia law permits original process to be served simply by mailing the complaint to counsel for the defendant. *See Walker v. Auto-Owners Ins. Co.*, 583 S.E.2d 215, 216 (Ga. Ct. App. 2003) (mailing a copy of the summons and complaint to defendant's lawyer did not constitute proper service of original complaint under Georgia law).

[16] The court notes that the parties stipulated to the filing of the amended complaint pursuant to Pennsylvania Rule of Civil Procedure 1033. That Rule permits a party "either by filed consent of the adverse party or by leave of court" to "at any time change the form of action,

Because "Manheim" is, by defendants' own admission, the fictitious name in which MAI does business, plaintiff's use of the name "Manheim" in his original complaint did not render service ineffective. Accordingly, the thirty-day period in which to file a notice of removal began to run when MAI was served with that complaint on April 10, 2009. MAI did not file its notice of removal until July 27, 2009, more than ninety days after receiving the original complaint; hence, the notice of removal was untimely, and the case must be remanded for this reason as well.

## C.    Attorneys' Fees

Plaintiff also seeks an award of attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c), which provides, in relevant part, that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Although the statute, by its use of the term "may," leaves the award of costs and attorneys' fees to the district court's discretion, the Supreme Court has articulated standards by which this discretion should be exercised. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139-41 (2005). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.* at 141.

Because the court cannot say that MAI lacked an objectively reasonable basis for removing this case to federal court, the court will deny plaintiff's request for attorneys' fees. As

correct the name of a party or amend his pleading," Pa. R. Civ. P. 1033; however, it "cannot be utilized to add or substitute a new party," *Claudio v. Dean Machine Co.*, 831 A.2d 140, 146 (Pa. 2003). Thus, to the extent that the purpose of the amendment was to add MAI as a new party to the case, as defendants now contend, use of Rule 1033 would have been improper. *See id.* at 146-47. It was appropriate, however, to correct the name of Manheim to MAI.

set forth above, the court concludes that defendants have failed to offer evidence that the proposed class is large enough that aggregate class damages could exceed the $5 million jurisdictional amount. Despite this failure of proof, however, it is not at all clear that defendants lacked an objectively reasonable basis to believe that the class is sufficiently large. In particular, although the court finds that defendants' assertion in their opposition memorandum that defendant MPAS conducted over 50,000 vehicle inspections "at its facilities" during calendar year 2008 is insufficient to show by a preponderance of the evidence that a sufficient number of those inspections were conducted in Pennsylvania, this figure suggests that defendants could reasonably have believed that the class was large enough to satisfy the class action amount in controversy requirement. Plaintiff argues that attorneys' fees are also warranted because the timeliness issue was "not even a close call." (Pl.'s Mem. 11.) While the court agrees with plaintiff's analysis of this issue, the court cannot say that MAI lacked an objectively reasonable basis for calculating the thirty-day removal period from the date it received the amended complaint, given the pattern of negotiations between the parties regarding the filing of that complaint.

## IV.    Conclusion

Because defendants have failed to justify their jurisdictional allegations by a preponderance of the evidence, and because the notice of removal was not timely filed, the court will grant plaintiff's motion to remand. However, because the court cannot conclude that defendant MAI lacked an objectively reasonable basis to remove the case, the court will deny plaintiff's request for costs and attorneys' fees. An appropriate order accompanies this memorandum.